IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-179-D

| | |
|---|---|
| CHRISTIAN NAEF, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COUNTY OF NEW HANOVER; )<br>DR. LESHONDA WALLACE, individually )<br>and in her official capacity as Chair at Large )<br>of NEW HANOVER COUNTY HEALTH )<br>AND HUMAN SERVICES; EDWARD J. )<br>MCMAHON, individually and in his )<br>official capacity as SHERIFF OF NEW )<br>HANOVER COUNTY; KENNETH W. )<br>SARVIS, individually and in his official )<br>capacity as DEPUTY SHERIFF; )<br>E.D. LONG, individually and in his official )<br>capacity as DEPUTY SHERIFF; and )<br>JEFFREY ROHENA, individually and in )<br>his official capacity as DEPUTY SHERIFF, )<br>)<br>Defendants. ) | **ORDER** |

On October 21, 2022, Christian Naef ("Naef" or "plaintiff"), then proceeding pro se, filed a motion to proceed in forma pauperis and proposed complaint asserting claims under 42 U.S.C. § 1983 [D.E. 1]. On November 21, 2022, after the court denied Naef's application to proceed in forma pauperis [D.E. 4], Naef paid the filing fee. On January 30, 2023, defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 19] and filed a memorandum in support [D.E. 20]. See Fed. R. Civ. P. 12(b)(6).[1] On March 27, 2023, Naef, now

---

[1] The court declines to dismiss defendants E.D. Long, Leshonda Wallace, and New Hanover County based on Naef's alleged failure to perfect service on these defendants. See Mem. Supp. Mot. Dismiss [D.E. 20] 28–30; cf. Gelin v. Shuman, 35 F.4th 212, 219–20 (4th Cir. 2022).

represented by counsel [D.E. 22], responded in opposition [D.E. 24]. On April 6, 2023, defendants replied [D.E. 26]. As explained below, the court grants in part the motion to dismiss, but allows Naef to file an amended complaint.

I.

Naef is a citizen and resident of New Hanover County, North Carolina ("NHC"). See Compl. [D.E. 1-1] ¶ 1. Naef's complaint concerns a policy which required anyone attending a public meeting in an NHC building to wear a face mask during the COVID-19 pandemic. See id. at ¶¶ 6–7. Defendant Wallace was an NHC employee and instrumental in "the formation of the policy enforcing the mask requirement in her official capacity as Chair at Large for NHC HHS." Id. at ¶¶ 3, 8. Wallace also presided over several public hearings Naef attended, where she established and enforced "the level of decorum under which the hearings would proceed, and she alone decided if and when an individual attending a hearing would be removed and the reasons therefore." Id. at ¶ 11. Naef alleges that Wallace "both personally and as Chair, favored the mask requirement in public buildings," and allowed supporters of the mask requirement to exceed their allotted speaking time and not to wear a face mask properly at all times, while "repeatedly disfavor[ing]" opponents of the mask requirement "by instructing deputies to remove such individuals from the hearings for failure to wear a mask, failure to wear a mask in a manner she deemed proper, or for speaking beyond the time limits provided for comment." Id. at ¶¶ 11–13, 16, 23, 25, 27.

Defendants Sarvis, Long, and Rohena are NHC deputy sheriffs, and defendant McMahon is the NHC Sheriff. See id. at ¶¶ 4–5. McMahon "assigned or otherwise directed" Sarvis, Long, Rohena, and "other un-named Deputy Sheriffs" to provide security at the public hearings, and "instruct[ed] them to not allow any individual into the NHC HHS Building who was not wearing a mask, to remove (upon the instruction of defendant Wallace) those individuals attending the hearings

2

whom she desired to be removed, and/or to remove any attendee who the deputies otherwise singled out for failure to either wear a mask or to wear a mask properly." Id. at ¶ 9.

On August 31, 2021, Naef attended a public hearing at the NHC HHS building "regarding, among other things, the revision, implementation and enforcement of rules governing mask requirements in public buildings in New Hanover County." Id. at ¶ 8. Naef "was clearly among those expressing opposition to the mask requirement." Id. at ¶ 15. Naef was scheduled to speak at the hearing. "[W]ithout warning, defendant Wallace directed deputies to remove Mr. Naef from the hearing by saying, 'Get that man out of here; his mask slipped below his nose.'" Id. at ¶¶ 16, 19. At Wallace's direction, "several un-named deputies seized him, pulled his arm violently and dragged him to the ground." Id. at ¶ 17. Naef did not resist, but "the deputies pulled him up forcefully from the ground and roughly ushered him from the hearing, using excessive and unwarranted force, bruising plaintiff and injuring his shoulder in doing so." Id. Naef alleges that Wallace "calculated" Naef's removal to prevent him from speaking, "in keeping with defendant Wallace's general policy in favor of the mask requirement and her general inclination against those in opposition to it." Id. at ¶ 19.

On October 6, 2021, Naef was entering an NHC Board of Education public meeting when defendant Sarvis confronted Naef for not wearing a mask and told Naef "not to 'make any trouble.'" Id. at ¶ 21. Before Naef could comply with the mask mandate, Sarvis "physically picked plaintiff up to the point that his feet were literally off the ground and carried him forcefully out of the building where the BOE hearing was being held, preventing plaintiff from attending it altogether, and making it clear in the process that defendant Sarvis disapproved of plaintiff's opposition to the mask requirement and that plaintiff was being prevented from attending the hearing because of his opposition to the mask requirement." Id. at ¶ 22.

3

On November 12, 2021, Naef "spoke in opposition to the mask requirement" at an NHC HHS public hearing. Defendant Wallace instructed deputies to remove Naef for exceeding his allotted speaking time. Id. at ¶ 27. Wallace, however, did not tell deputies to remove "several other people who spoke in favor of the mask requirement." Id.

"Defendants Sarvis, Long and Rohena were all present and directly involved in plaintiff's violent removal from the hearing . . . and his injuries . . . [and] deprived plaintiff of personal property (paperwork and a personally much valued chaplain's hat) which were never returned to him." Id. at ¶ 28. Wallace filed a criminal complaint for trespass against Naef. See id. at ¶ 29. At Naef's trial, Rohena testified "that plaintiff was arrested to make an example of him." Id. at ¶ 30. Ultimately, "the charge against plaintiff was dismissed . . . on grounds that no warning had been given to plaintiff prior to his arrest that he was trespassing upon state property during a hearing at which he was scheduled to speak." Id.

Count one of Naef's complaint asserts a claim under 42 U.S.C. § 1983 against Wallace for violating his First Amendment right to freedom of speech when she ordered him removed from the public hearings, and against NHC for failing to train Wallace and for acquiescing "to defendant Wallace's repeated violation of the constitutional rights of those opposing the mask requirement so often that they became emblematic or a reflection of its general policy." Id. at ¶¶ 33–40. Count two asserts a claim under 42 U.S.C. § 1983 against Sarvis, Long, and Rohena for violating the Fourth Amendment by removing Naef from the October 6 and November 12 hearings and using excessive force in arresting him on November 12, 2021, and against Sheriff McMahon as their supervisor. See id. at ¶¶ 41–47. Counts three through five assert state-law claims for malicious prosecution, battery, and gross negligence against Sarvis, Long, and Rohena. See id. at ¶¶ 48–56. Naef seeks unspecified monetary damages, costs, and attorney's fees.

4

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

The standard used to evaluate the sufficiency of the pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 677–83; Coleman, 626 F.3d at 190; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

5

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d, 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips, 572 F.3d at 180. Additionally, a section 1983 plaintiff must plausibly allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676–77; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–94 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Defendants' motion to dismiss requires the court to consider North Carolina state law claims. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th

Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

Defendants seek dismissal of Naef's official-capacity claims against the individual defendants as redundant of his claims against NHC and Sheriff McMahon. See [D.E. 20] 6–7. Naef does not object to the court dismissing these claims to the extent dismissal "does not apply to Plaintiff's state law-based claims against the individually named defendants in their official capacities." [D.E. 24] 17. Accordingly, the court dismisses Naef's official-capacity section 1983 claims against the individual defendants. See, e.g., Kentucky v. Graham, 473 U.S. 159, 165–66 (1985); Knibbs v. Momphard, 30 F.4th 200, 231 (4th Cir.), cert. denied, 143 S. Ct. 303 (2022);

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

7

Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306–07 (4th Cir. 2006); Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004).

B.

Naef characterizes his section 1983 claim in count one of the complaint against Wallace and NHC as one for retaliation in violation of the First Amendment. See [D.E. 24] 11. In order to state a First Amendment retaliation claim under section 1983, a plaintiff must plausibly allege that: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (alterations omitted); see Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005). A plaintiff "suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Constantine, 411 F.3d at 500; see Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006). A plaintiff also must plausibly allege that a "defendant's conduct resulted in something more than a 'de minimis inconvenience' to [his] exercise of First Amendment rights." Balt. Sun Co., 437 F.3d at 416 (quotation omitted); see Constantine, 411 F.3d at 500.

Whether Wallace impermissibly restricted Naef's speech depends in part on the nature of the forum. See Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106–07 (2001); Steinburg v. Chesterfield Cnty. Plan. Comm'n, 527 F.3d 377, 384–85 (4th Cir. 2008). The parties agree that the public meetings constituted a limited public forum, and that Wallace could restrict Naef's speech to the relevant topic, impose a time limitation, and preserve civility and decorum. See [D.E. 20] 7–11; [D.E. 24] 11; see, e.g., Pleasant Grove City v. Summum, 555 U.S. 460, 470 (2009); Good

8

News Club, 533 U.S. at 106; Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995); Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384, 392–93 (1993); Steinburg, 527 F.3d at 384–85; Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five, 470 F.3d 1062, 1067–68 (4th Cir. 2006); Judson v. Bd. of Supervisors of Mathews Cnty., 436 F. Supp. 3d 852, 864 (E.D. Va.), aff'd, 828 F. App'x 180 (4th Cir. 2020) (per curiam) (unpublished); Davison v. Plowman, 247 F. Supp. 3d 767, 777–78 (E.D. Va. 2017), aff'd, 715 F. App'x 298 (4th Cir. 2018) (per curiam) (unpublished).

Any restriction on speech within the limited public forum must be "reasonable and viewpoint neutral." Pleasant Grove, 555 U.S. at 470; see Good News Club, 533 U.S. at 106–07; Judson, 436 F. Supp. 3d at 864–65. Naef has plausibly alleged that Wallace targeted Naef's speech for restriction based on its content. See Compl. ¶¶ 12–13, 16, 21–22, 25, 27; see, e.g., McCoy v. Town of Pittsfield, 59 F.4th 497, 503 (1st Cir. 2023); Tobey, 706 F.3d at 387; Norse v. City of Santa Cruz, 629 F.3d 966, 975–76 (9th Cir. 2010) (en banc). Moreover, the court declines to address Wallace's argument that she is entitled to legislative immunity because she raised it for the first time in her reply brief. Reply Supp. Mot. Dismiss [D.E. 26] 7–8; see De Simone v. VSL Pharms., Inc., 36 F.4th 518, 531 (4th Cir. 2022).

## C.

In count two of the complaint, Naef sues Sheriff McMahon under a theory of supervisory liability. See, e.g., Compl. ¶¶ 45–46. The doctrine of respondeat superior generally does not apply to a section 1983 claim. See, e.g., Iqbal, 556 U.S. at 677; King v. Riley, __ F.4th __, 2023 WL 4982353, at *7 (4th Cir. Aug. 4, 2023); Carter v. Morris, 164 F.3d 215, 220–21 (4th Cir. 1999), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010); Shaw v. Stroud, 13 F.3d 791, 798–99 (4th Cir. 1994). Instead, where a defendant is sued on the basis of supervisory liability, "[a]

9

plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Carter, 164 F.3d at 221 (quotations omitted); see King, 2023 WL 4982353, at *7; Shaw, 13 F.3d at 799. Naef has not alleged facts sufficient to state a claim based on supervisory liability. See Langford v. Joyner, 62 F.4th 122, 126 (4th Cir. 2023); Green v. Nocciero, 676 F.3d 748, 752 (8th Cir. 2012); Caraway v. City of Pineville, No. 3:21-CV-00454, __ F. Supp. 3d __, 2022 WL 16700687, at *15 (W.D.N.C. Nov. 3, 2022). Accordingly, the court dismisses count two of the complaint against Sheriff McMahon.[3]

D.

"The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003); see Graham v. Connor, 490 U.S. 386, 395 (1989); E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 179 (4th Cir. 2018); Yates v. Terry, 817 F.3d 877, 884 (4th Cir. 2016). "Courts evaluate a claim of excessive force based on an 'objective reasonableness' standard." Yates, 817 F.3d at 884; see Graham, 490 U.S. at 399. "The subjective intent or motivation of an officer is irrelevant at this step." Yates, 817 F.3d at 884; see Graham, 490 U.S. at 397. Courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

---

[3] To the extent Naef contends that count two of the complaint also "alleges that Defendants Sarvis, Long and Rohena . . . violated . . . Plaintiff's First Amendment right to freedom of speech," [D.E. 24] 13, the claim fails. See Mauler v. Arlotto, 777 F. App'x 59, 60 (4th Cir. 2019) (per curiam) (unpublished); Green, 676 F.3d at 753; Jenkins v. Kinser, No. 3:21-CV-78, 2021 WL 4205606, at *5 (N.D. W. Va. Sept. 15, 2021) (unpublished); Stevens v. Town of Snow Hill, No. 4:19-CV-156, 2021 WL 2345353, at *5 (E.D.N.C. June 8, 2021) (unpublished)(collecting cases), aff'd, No. 21-1685, 2022 WL 16707069 (4th Cir. Nov. 4, 2022) (per curiam) (unpublished). Moreover, Naef cannot "amend [his] complaint in a response brief." Stevens, 2021 WL 2345353, at *5.

countervailing governmental interests at stake." Jones, 325 F.3d at 527 (quotation omitted); Graham, 490 U.S. at 396); see Yates, 817 F.3d at 884–85. In doing so, the court must focus on the facts and circumstances of each case, taking into account "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; see Yates, 817 F.3d at 885. "Our inquiry into the reasonableness of the force also requires us to consider the facts at the moment that the challenged force was employed with an eye toward the proportionality of the force in light of all the circumstances." Yates, 817 F.3d at 885 (quotations omitted); see Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015). "Artificial divisions in the sequence of events do not aid a court's evaluation of objective reasonableness." Smith, 781 F.3d at 101 (quotation omitted); Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005). Ultimately, the court must examine the totality of the circumstances to determine whether the force used was objectively reasonable. See Yates, 817 F.3d at 885; Smith, 781 F.3d at 101.

Naef has not plausibly alleged a Fourth Amendment violation concerning his forcible removal from the October 6, 2021 meeting. See Heaney v. Roberts, 846 F.3d 795, 804–05 (5th Cir. 2017); Warden v. Walkup, No. CV-13-00283, 2020 WL 1694752, at *4–5 (D. Ariz. Apr. 7, 2020) (unpublished); Corr v. Borough, 221 F. Supp. 3d 660, 668–69 (W.D. Pa. 2016); cf. Jenkins, 2021 WL 4205606, at *4; Gelinas v. Boisselle, No. CIV.A. 10-30192, 2011 WL 5041497, at *9 (D. Mass. Oct. 17, 2011) (unpublished). Accordingly, the court dismisses count two of the complaint to the extent it relies on Naef's removal from the hearing on October 6, 2021.

Naef has plausibly alleged a Fourth Amendment violation concerning his detention and arrest on August 31, 2021. See Mauler v. Arlotto, 777 F. App'x 59, 62 (4th Cir. 2019) (per curiam) (unpublished); Smith v. Murphy, 634 F. App'x 914, 917 (4th Cir. 2015) (per curiam) (unpublished);

11

Est. of Saylor v. Regal Cinemas, Inc., 54 F. Supp. 3d 409, 417–18 (D. Md. 2014). Because Naef has plausibly alleged a Fourth Amendment claim concerning his August 31, 2021 detention and arrest, he may proceed with his state law battery claim in count four of the complaint and defendants are not entitled to public official immunity at this preliminary stage of the proceedings. Cf. Thomas v. Holly, 533 F. App'x 208, 223–24 (4th Cir. 2013) (per curiam) (unpublished); Caraway, 2022 WL 16700687, at *17–18; Bartley v. City of High Point, 381 N.C. 287, 296, 873 S.E.2d 525, 534 (2022); Lopp v. Anderson, 251 N.C. App. 161, 172, 795 S.E.2d 770, 778 (2016).

E.

Under North Carolina law, "[t]o establish malicious prosecution, a plaintiff must show that the defendant (1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff." Turner v. Thomas, 369 N.C. 419, 425, 794 S.E.2d 439, 444 (2016); N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc., 366 N.C. 505, 512, 742 S.E.2d 781, 786–87 (2013). In a malicious prosecution claim, probable cause means "the existence of such facts and circumstances, known to the defendant at the time, as would induce a reasonable man to commence a prosecution." Turner, 369 N.C. at 425, 794 S.E.2d at 444 (cleaned up); see Best v. Duke Univ., 337 N.C. 742, 750, 448 S.E.2d 506, 510 (1994); Cook v. Lanier, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966). The fact that the criminal proceeding ultimately ended in Naef's favor does not "automatically negate the existence of probable cause at the time prosecution was commenced" or establish malice. Turner, 369 N.C. at 425, 794 S.E.2d at 445.

"A plaintiff alleging malicious or intentional acts by a government official faces a high bar . . . ." Fox v. City of Greensboro, 279 N.C. App. 301, 316, 866 S.E.2d 270, 284 (2021). "[T]he malice element may be satisfied by a showing of either actual or implied malice." Kirschbaum v.

12

McLaurin Parking Co., 188 N.C. App. 782, 789, 656 S.E.2d 683, 688 (2008) (quotation omitted). Malice requires that the defendant "was motivated by personal spite and a desire for revenge" or that the defendant acted with "reckless and wanton disregard" for the plaintiff's rights. Fox, 279 N.C. App. at 316, 866 S.E.2d at 284 (quotation omitted); Kirschbaum, 188 N.C. App. at 789, 656 S.E.2d at 688.

Rohena asserts the defense of public official immunity. See [D.E. 20] 27–28. Under North Carolina law, "a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." Wilcox v. City of Asheville, 222 N.C. App. 285, 288, 730 S.E.2d 226, 230 (2012); see Russ v. Causey, 468 F. App'x 267, 272 (4th Cir. 2012) (unpublished); Bartley, 381 N.C. at 291, 873 S.E.2d at 531. Where, as here, "a defendant performs discretionary acts as part of his or her official or governmental duties, to sustain a suit for personal or individual liability, a plaintiff must allege and prove that the defendant's acts were malicious or corrupt." Russ, 468 F. App'x at 273 (quotation omitted); Schlossberg v. Goins, 141 N.C. App. 436, 446, 540 S.E.2d 49, 56 (2000).

Naef has not plausibly alleged that Rohena lacked probable cause to arrest him. See, e.g., McClure v. Ports, 914 F.3d 866, 874 (4th Cir. 2019); Green, 676 F.3d at 755; Jenkins, 2021 WL 4205606, at *5. Naef's sole allegation that Rohena testified that he "was arrested to make an example of him," Compl. ¶ 30, is also too conclusory to survive a motion to dismiss. "Because probable cause existed for his arrest, Plaintiff's claim fails not only because [Rohena is] shielded by public official immunity, but also on the merits." Caraway, 2022 WL 16700687, at *19. Accordingly, the court dismisses count three of the complaint.

13

F.

"Gross negligence is wanton conduct done with conscious or reckless disregard for the rights and safety of others." Bullins v. Schmidt, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988), abrogated on other grounds by Young v. Woodall, 343 N.C. 459, 471 S.E.2d 357 (1996); see Shaw, 13 F.3d at 803; Braswell v. Colonial Pipeline Co., 395 F. Supp. 3d 641, 654 (M.D.N.C. 2019); Truhan v. Walston, 235 N.C. App. 406, 412, 762 S.E.2d 338, 343 (2014); Toomer v. Garrett, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002); Sawyer v. Food Lion, Inc., 144 N.C. App. 398, 403, 549 S.E.2d 867, 870 (2001). Naef has not plausibly alleged that Sarvis, Long, or Rohena acted wantonly. Cf. Ward v. AutoZoners, LLC, 958 F.3d 254, 270–71 (4th Cir. 2020); Braswell, 395 F. Supp. 3d at 654. Accordingly, the court grants defendants' motion to dismiss count five of the complaint.

G.

NHC and Sheriff McMahon contend that even if either could be held liable for Naef's state law claims, the doctrine of governmental immunity bars such claims against them. See [D.E. 20] 26–27. Under North Carolina law, "[g]overnmental immunity is that portion of the [s]tate's sovereign immunity which extends to local governments." Wray v. City of Greensboro, 370 N.C. 41, 47, 802 S.E.2d 894, 898 (2017). Governmental immunity provides that a local governmental entity such as a county or town is immune from liability for the torts of its officers and employees committed while they are performing governmental functions. See Galligan v. Town of Chapel Hill, 276 N.C. 172, 175, 171 S.E.2d 427, 429 (1970); Sellers v. Rodriguez, 149 N.C. App. 619, 623, 561 S.E.2d 336, 339 (2002).

Generally, governmental immunity bars tort lawsuits against the governmental entity absent waiver. See Wray, 370 N.C. at 47, 802 S.E.2d at 898; Meyer v. Walls, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). A county or town may waive governmental immunity by purchasing insurance, but

14

any waiver is limited to the extent of the insurance coverage. See, e.g., N.C. Gen. Stat. §153A-435(a); Evans v. Hous. Auth., 359 N.C. 50, 57, 602 S.E.2d 668, 673 (2004); Satorre v. New Hanover Cnty. Bd. of Comm'rs, 165 N.C. App. 173, 176, 598 S.E.2d 142, 144 (2004). If "the insurance policy does not indemnify [the] defendant against the negligent acts alleged in plaintiff's complaint, [the] defendant has not waived its sovereign immunity." Doe v. Jenkins, 144 N.C. App. 131, 135, 547 S.E.2d 124, 127 (2001); see Dawes v. Nash Cnty., 357 N.C. 442, 445–46, 449, 584 S.E.2d 760, 763, 765 (2003); Est. of Earley ex rel. Earley v. Haywood Cnty. Dep't of Soc. Servs., 204 N.C. App. 338, 341, 694 S.E.2d 405, 408 (2010). "In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action" under state law. Wray, 370 N.C. at 47, 802 S.E.2d at 899.

Under North Carolina law, "a sheriff may waive governmental immunity in at least two different ways," either "by purchasing a bond as is required by N.C. Gen. Stat. § 162–8" or "when a county purchases liability insurance which provides coverage to the sheriff." White v. Cochran, 229 N.C. App. 183, 189–90, 748 S.E.2d 334, 339–40 (2013); see Hines v. Johnson, No. 1:19-CV-515, 2020 WL 1516397, at *16 (M.D.N.C. Mar. 30, 2020) (unpublished). The "purchase of a bond precludes a sheriff from relying upon the protective embrace of governmental immunity . . . only where the surety is joined as a party to the action, and only to the extent of the amount of the bond." Cochran, 229 N.C. App. at 190, 748 S.E.2d at 339 (quotation and citation omitted).

Naef has not plausibly alleged a waiver of governmental immunity. Cf. [D.E. 24] 22; Est. of Graham v. Lambert, 282 N.C. App. 269, 273, 871 S.E.2d 382, 386, rev. allowed, 878 S.E.2d 802 (N.C. 2022). Thus, Naef has failed to state a claim under state law against NHC or Sheriff McMahon. See State ex rel. Cain v. Corbett, 235 N.C. 33, 39, 69 S.E.2d 20, 24 (1952).

15

Naef requests to amend the complaint, which defendants oppose. See [D.E.24] 22; [D.E. 26] 3. The court grants the request. See, e.g., Dolgaleva v. Va. Beach City Pub. Schs., 364 F. App'x 820, 824 n.2 (4th Cir. 2010) (per curiam) (unpublished); Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 & n.3 (4th Cir. 2010). Naef shall have until September 21, 2023, to file an amended complaint.

III.

In sum, the court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss [D.E. 19] and DISMISSES the complaint IN PART. Naef shall have until September 21, 2023, to file an amended complaint.

SO ORDERED. This 31 day of August, 2023.

Dever

JAMES C. DEVER III
United States District Judge
