IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-179-BO

| | |
|---|---|
| CHRISTIAN NAEF ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| COUNTY OF NEW HANOVER, et al., ) | |
| ) | |
| Defendants. ) | |

This cause comes before the Court on defendants' motion for summary judgment [DE 65]. Plaintiff responded [DE 75] and defendant replied [DE 76]. In this posture, the motion is ripe for ruling. For the following reasons, the motion is granted.

## BACKGROUND

Doctor LeShonda Wallace served as chair of the New Hanover County Consolidated Human Services Board. [DE 67, ¶ 6]; [DE 73, ¶ 6]. In her position as chair, she moderated and presided over the Board's public meetings and hearings. [DE 67, ¶ 8]; [DE 73, ¶ 8]. This case arises from plaintiff Christian Naef's attendance at the Board's hearings concerning a COVID-19-era mask mandate.

On August 17, 2021, the New Hanover County Public Health Director issued an order temporarily mandating the "[w]earing of a face covering over the nose and mouth while in indoor public spaces," which would remain effective until the Board decided whether to enact a more permanent rule. [DE 68-5]. On August 31, 2021, Wallace presided over a public hearing to receive information and public comment on whether the Board should implement a local health rule mandating face coverings while occupying indoor public spaces. [DE 67, ¶ 19–20]; [DE 73, ¶ 19–

20]. Defendant Deputies Jeffrey Rohena and E.D. Long provided security for the hearing. [DE 67, ¶ 23]; [DE 73, ¶ 23].

Plaintiff attended the meeting and wore a bright red bandana as a face covering. [DE 67, ¶ 27]; [DE 73, ¶ 27]. The bandana would sometimes fall below plaintiff's nose, or sometimes plaintiff would remove it to take a breath. [DE 67, ¶ 30–31]; [DE 73, ¶ 30–31]. After plaintiff's bandana had remained below his mouth for four consecutive minutes, Wallace referred to plaintiff, asking deputies to "remove the man in the third row with the red bandana who will not wear his mask." [DE 67, ¶ 43–44]; [DE 73, ¶ 43–44]. Plaintiff protested, explaining that he had signed up to speak. [DE 67, ¶¶ 45, 47]; [DE 73, ¶¶ 45, 47]. Wallace responded that he was not a speaker any longer. [DE 68-1, ¶ 64]. The deputies present had to grab and pull plaintiff to escort him out. [DE 67, ¶¶ 54–57]; [DE 73, ¶¶ 54–57]. At the August 31 meeting, the Board passed the county-wide mask mandate, which was in effect at the meeting plaintiff attended on November 12, 2021. [DE 67, ¶ 72, 77]; [DE 73, ¶ 72, 77].

The Board held its November 12, 2021 meeting to consider whether to continue or suspend the mask mandate imposed at the August 31 meeting. [DE 67, ¶ 78]; [DE 73, ¶ 78]. As Wallace moved to the public comment period of the meeting and invited the first speaker to the podium, she reminded the attendees that each speaker was limited to three minutes. [DE 67, ¶¶ 89–90]; [DE 73, ¶¶ 89–90]. When plaintiff was invited to the podium, he began his remarks by saying that he had a message which would take more than three minutes and that he would not be limited by time. [DE 67, ¶ 94]; [DE 73, ¶ 94]. Indeed, plaintiff continued to speak at the expiration of his three minutes. [DE 67, ¶ 98]; [DE 73, ¶ 98]. Wallace informed him that his time was up, but he continued to speak, so Wallace asked the deputies to remove him. [DE 67, ¶¶ 99–100]; [DE 73, ¶¶ 99–100]. The deputies had to lift plaintiff off the ground to remove him from the hearing. [DE 67,

2

¶ 109]; [DE 73, ¶ 109]. Deputy Rohena charged plaintiff with misdemeanor resist/delay/obstruct and second-degree trespassing. [DE 67, ¶ 112]; [DE 73, ¶ 112]. The deputies handcuffed plaintiff and transported him to the New Hanover County Detention Facility to appear before a magistrate. [DE 67, ¶¶ 112, 113, 120]; [DE 73, ¶¶ 112, 113, 120]. The magistrate found probable cause for the charges. *Id.* The Board repealed the mask mandate and adjourned the meeting. [DE 67, ¶ 131–133]; [DE 73, ¶ 131–133].

Plaintiff filed this action on October 21, 2022. On August 31, 2023, the Court granted in part and denied in part defendants' motion to dismiss the complaint. Defendants moved for summary judgment on all claims still pending after the Court's order of August 31, 2023: (1) § 1983 First Amendment retaliation asserted against defendants Wallace and New Hanover County for the August 31, 2021 and November 12, 2021 meetings; (2) § 1983 Fourth Amendment excessive force claims against Deputies Long, Sarvis, and Rohena; and (3) state law battery claims against Deputies Long, Sarvis, and Rohena.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in

3

support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

## DISCUSSION

### I. § 1983 First Amendment Retaliation

To establish a First Amendment § 1983 retaliation claim, a plaintiff must demonstrate that "(1) he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendants' conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (cleaned up). To establish the causation element, "it is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [state actor] would not have taken the alleged retaliatory action." *Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1140 (4th Cir. 1990). So, to create a genuine issue of material fact, plaintiff must point to evidence indicating that if he had not opposed the mask mandate, Wallace would not have removed him from the hearings.

*a. August 31, 2021 Hearing*

Given that plaintiff never actually took the podium at the August 31, 2021 hearing, it is dubious that Wallace could have retaliated against plaintiff's expression in opposition to the mask mandate. Even assuming arguendo that plaintiff engaged in a First Amendment protected activity,

4

he points to no evidence that Wallace removed him because of the protected activity. Rather, it appears Wallace removed him because of his noncompliance with the mask mandate.

Plaintiff contends that other attendees violated the mask mandate when their masks slipped below their noses or mouths, but they were not removed. [DE 74]. He alleges that the mask mandate was enforced against attendees unequally and as a pretext to remove those opposing the mask mandate. Plaintiff has not, however, identified any attendee in favor of the mask mandate that Wallace treated more favorably. Defendants, on the other hand, purport that Wallace removed him because his red, eye-catching bandana fell below his mouth and remained there for four minutes. As Wallace explains in her affidavit, any unequal enforcement of the mandate arose from what she could see, rather than what opinions the attendees apparently intended to express. [DE 68-1, ¶¶ 79–81]. Without any evidence to the contrary, other than plaintiff's speculation, there is no genuine fact dispute, and this is not a triable issue for a jury.

b. *November 12, 2021 Hearing*

While Wallace removed plaintiff from the August hearing for violating the mask mandate, she removed him from the November hearing for exceeding his time and refusing to surrender the podium. Plaintiff contends that this was retaliation for speaking in opposition to the mask mandate. As with the August hearing, however, he identifies no attendee in favor of the mask mandate who received more favorable treatment. Wallace allowed plaintiff to speak for three minutes, which was the same amount of time allotted for all the speakers, including those in favor of the mask mandate. The deputies removed plaintiff only after he refused to leave the podium. Plaintiff's speculation that his removal was nevertheless retaliation for expressing his viewpoint is insufficient to create a genuine issue of material fact.

## II. § 1981 Fourth Amendment Excessive Force

The defendants have raised the defense of qualified immunity as to the § 1983 claim against them. Because qualified immunity provides immunity from suit, and therefore a trial, the Court considers this issue first. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). When a court's decision on one step is dispositive, it need not reach the other. *See Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) ("we need not reach both prongs of the analysis," citing *Pearson*, 555 U.S. 223).

To determine whether the defendants acted with qualified immunity, the first question is whether they violated plaintiff's Fourth Amendment rights. Law enforcement officers violate an individual's Fourth Amendment rights when they effect a seizure using excessive force. *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). "*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."

6

*Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). This standard is objective, and thus without regard to the officer's subjective intention or motivation. *Schultz*, 455 F.3d at 477.

A court does consider, however, the facts and circumstances confronting the officer, and it must focus its attention on the moment the force was employed. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (citations omitted). Specific factors to be considered are the severity of the crime at issue, whether the suspect poses an immediate threat, and whether the suspect is actively resisting or attempting to flee. *Graham*, 490 U.S. at 396. Additional considerations include "the extent of the plaintiff's injury" and "any effort made by the officer to temper or to limit the amount of force" used. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Whether the officer's conduct was reasonable is a question of law to be decided after determining "the relevant set of facts and draw[ing] all inferences in favor of the nonmoving party to the extent supportable by the record." *Scott*, 550 U.S. at 381 n.8 (emphasis omitted).

The Fourth Circuit recently decided *Somers v. Devine*, 132 F.4th 689 (4th Cir. 2025), an instructive COVID-era excessive force case. Plaintiff Somers refused to wear a mask and was denied entry to a public school board meeting. *Id.* at 692–93. The defendant police officer Devine asked the individuals in the lobby outside the meeting room to quiet down, as the noise from the lobby disturbed the meeting. Somers responded, "no," and refused to leave voluntarily. *Id.* at 693. Officer Devine forcibly removed her, brought her to the ground, "rolled her onto her chest, pushed both hands behind her back, and applied pressure to her back for approximately one minute to keep her still" as he handcuffed her. *Id.* Somers indicated he was hurting her has he did so. *Id.* The Fourth Circuit affirmed the trial court in finding Devine's use of force was minimal and he was entitled to qualified immunity. *Id.*

While plaintiff's actions in the instant case are not particularly severe and he posed no immediate physical threat (although he may have posed a threat to the organization and decorum of the Board's proceedings), his refusal to leave voluntarily was the kind of resistance justifying a use of force. *See Somers*, 132 F.4th at 699; *Graham*, 490 U.S. 386. Plaintiff describes the injuries he sustained during his removal as "minor." [DE 74, ¶ 6]; *see Kingsley*, 576 U.S. at 397. The deputies' use of force is analogous to the force used by the defendant officer in *Somers*. As that court said,

> In [Somers'] case, the use of force was minimal and was made necessary by Somers' resistance. With regard to the lobby incident, Somers refused to stand up, telling Officer Devine that he would "have to lift [her] out of this chair." Officer Devine then did so. Somers next refused to roll herself over onto her chest when instructed, so the officer again did so. He applied enough pressure on Somers' back to keep her still while handcuffing her, and he loosened up in under a minute. . . . Viewed in their totality, these events are not an example of excessive force. They are an example of an appropriate, proportional response to an individual resisting lawful arrest and lawful orders to remain masked in accordance with Maryland law. And even when crimes are not "severe," we permit officers to apply the degree of force "necessary to overcome that resistance."

*Somers*, 132 F.4th at 699 (internal citations omitted). The force defendants used to remove plaintiff from the Board meetings was not excessive.

Although plaintiff "contends that Deputy Walker struck [him] outside the camera view while removing him from the meeting" [DE 73, ¶ 67], Deputy Walker is not a defendant in this case. Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). "A claim under § 1983 requires factual details about each defendant's personal involvement in the violation of the plaintiff's rights." *Helton v. Owens*, 2025 U.S. Dist. LEXIS 174627 at *9 (W.D. Va. Sep. 8, 2025) (citing *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017)).

8

Because the defendants' use of force did not violate the Fourth Amendment, they acted with qualified immunity. In addition to their qualified immunity defense, defendants are entitled to judgment as a matter of law because no constitutional violation occurred.

### III. State Law Battery Claim

Public official immunity precludes certain suits against public officials in their individual capacities. "Police officers engaged in performing their duties are public officials for the purposes of public official immunity." *Lopp v. Anderson*, 251 N.C. App. 161, 168 (2016). "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Wilcox v. City of Asheville*, 222 N.C. App. 285, 288, 730 S.E.2d 226, 230 (2012) (citing *Smith v. State*, 289 N.C. 303, 331 (1976)). "A malicious act is one which is: '(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another.'" *Fullwood v. Barnes*, 250 N.C. App. 31, 38 (2016).

"Absent evidence to the contrary, courts presume public officials 'discharge their duties in good faith and exercise their powers in accord with the spirit of the law.'" *Id.* (cleaned up) (citing *Strickland v. Hedrick*, 194 N.C. App. 1, 10 (2008)). "'Any evidence presented to rebut this presumption must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise.'" *Mitchell v. Pruden*, 251 N.C. App. 554, 560 (2017) (quoting *Fullwood*, 250 N.C. App. at 38).

Plaintiff did not respond to defendants' assertion of public official immunity in their memorandum in support of summary judgment. Given there is no evidence the deputies acted outside the scope of their authority, or with malice or corruption, they are entitled to public official immunity.

9

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [DE 65] is GRANTED.

SO ORDERED, this ___8___ day of January 2026.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE